**ZAZZALI, FAGELLA, NOWAK,
KLEINBAUM & FRIEDMAN**
Colin M. Lynch, Esq. (No. 0038381998)
570 Broad Street - Suite 1402
Tel.:  (973) 623-1822
Fax:  (973) 623-2209
Email: clynch@zazzali-law.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEWARK TEACHERS UNION LOCAL 481, AFT, AFL-CIO; SANYIKA MONTAGUE; JENNIFER FERRARA; and VANGELA CROWE, | Civil Action No. |
| Plaintiffs,<br>v. | **COMPLAINT AND JURY DEMAND** |
| CITY OF NEWARK BOARD OF EDUCATION; NATASHA PARED; and JOHN/JANE DOES 1-10 (representing Administrators who aided, abetted and/or conspired with Pared to deprive Plaintiffs of their rights under color of law), | |
| Defendants. | |

Plaintiffs Newark Teachers Union, Local 481, AFT, AFL-CIO ("NTU"), Sanyika Montague, Jennifer Ferrara, and Vangela Crowe (collectively, "Plaintiffs"), by and through undersigned counsel, bring this action against Defendants Newark Public Schools Board of Education ("Board" or "District") and Natasha Pared ("Pared"), in her individual capacity, collectively "Defendants," alleging a violation of 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1, et seq.

## PRELIMINARY STATEMENT

1.      The instant matter concerns retaliation taken against the Plaintiffs for having engaged in protected Union associational activity and/or for their association with their Union building representative in violation of the 1st and 14th Amendments to the United States Constitution, as well as the New Jersey State Constitution.

2.      More specifically, in the Fall of 2020, Plaintiff, Sanyika Montague, sought to and did become the Union representative for his school building, the Rafael Hernandez School. The principal of his school, Defendant Natasha Pared, openly interfered with his appointment to his Union position and openly and publicly expressed hostility to him and those Union members associated with him. She further threatened those who supported him and the Union with reprisals – that, is, that they would have a "problem with her." Among those openly and conspicuously supporting and associating with Plaintiff Montague were Plaintiffs, Jennifer Ferrara and Vangela Crowe.

3.      Defendant Pared was fully aware of the activities of the Plaintiff Montague, as well as the association of Plaintiffs Ferrara and Crowe with him and their support of him by and through her surreptitious eavesdropping on and participation in Union membership meetings and one or more meetings between the Plaintiffs and Union members with the Board's Director of Labor Relations, Joanne Watson, to formally complain of Defendant Pared's hostility toward the Union and its supporters and their rights.

4.      True to her word, Defendant Pared, acting in concert with others presently identified as John/Jane Does 1-10, and acting under color of law, engaged in reprisals against all Plaintiffs, causally related to their engagement in protected speech, associational and Union activity, by attempting to defame them, negatively evaluating their teaching performance, and

278133

falsely disciplining them, thereby tarnishing their reputations and placing them under threat of tenure charges of inefficiency and/or causing them loss of income.

5.      The Board's Superintendent and its Director of Labor Relations were made aware of the forgoing conduct and ratified same by their acts and omissions by failing or refusing to protect the Defendants in the exercise of their Constitutionally protected rights, causing the Plaintiffs to suffer monetary and emotional injury and placing Plaintiffs under threat of loss of their tenured teaching positions.

6.      Accordingly, as set forth more fully herein, the Plaintiffs seek a finding by the Court that their rights under both federal and State law were violated; equitable relief rescinding retaliatory performance observations and evaluations, and disciplinary action; an appropriate award of damages for both economic loss and emotional harm and distress; punitive damages; and an award of reasonable attorney costs and fees.

## PARTIES

### A.  Plaintiffs

7.      The NTU is the certified collective negotiations representative representing, among other employment titles, teaching staff and is party to a collective negotiations agreement between the NTU and Defendant Board.  Its principal place of business is 1019 Broad Street, 3rd Floor, Newark, New Jersey, 07102.

8.      Sanyika Montague ("Montague") is a natural person and resides at 14 Richelieu Place, Newark, New Jersey 07106.  Montague has been employed with Newark Public Schools for twenty-four (24) years.  He currently works as a Middle School Math Teacher at the Rafael Hernandez School and has worked in this role since approximately 1997.  Montague is also a member of and serves as Building Representative for the NTU.

278133

9.      Jennifer Ferrara ("Ferrara") is a natural person and resides at 179 Roseland Avenue, Caldwell, New Jersey, 07006.  Ferrara has been employed by Newark Public Schools for sixteen (16) years. She currently works as a Middle School English Language Arts Teacher at the Rafael Hernandez School and has worked in this role since 2014.  During the 2020-2021 school year, she taught 6th and 7th grade.  Ferrara is also a member of the NTU.

10.      Vangela Crowe ("Crowe") is a natural person and resides at 21 Clinton Place, Newark, New Jersey 07108.  Crowe has been employed by Newark Public Schools for twenty-three (23) years.  She currently works as a Middle School English Language Arts Teacher at the Rafael Hernandez School and has worked in this role since December 2018.  During the 2020-2021 school year and, currently, she taught/teaches 7th to 8th grade.  Crowe is also a member of the NTU.

**B.  <u>Defendants</u>**

11.      Newark Public Schools ("Board" or "District") is responsible for the administration and operation of all schools in Newark, New Jersey in Essex County. Its principal place of business is 765 Broad Street, Newark, New Jersey, 07102.

12.      Natasha Pared ("Pared") is a natural person residing in the State of New Jersey. Pared is employed with the Board as Principal of the Rafael Hernandez School, located in Newark, New Jersey.

13.      John and Janes Does (1-10) are Administrators employed by the Board, who aided and abetted and/or conspired with the Board and/or Pared to violate the rights of the Plaintiffs protected by the Constitutions of the United States and the State of New Jersey.

278133

## JURISDICTION AND VENUE

14.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and the pendent jurisdiction of this Court over Plaintiffs' state claims.

15.     Venue is proper within this District because all of the wrongful acts and/or omissions complained of herein occurred within the District of New Jersey.

16.     The causes of actions alleged seek to protect the right to be free from unlawful employment practices, to redress the deprivation of civil rights under the color of state law and rights secured by the United States Constitution, as well as the statutory and common laws of the State of New Jersey, and to recover damages, costs, and attorneys' fees under 42 U.S.C. §§§ 1983, 1985, 1988, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to 6-2.

17.     The actions (and inactions) and conspiracies alleged herein were engaged in and carried out by Defendants as officials, agents, employees, and co-conspirators of the City of Newark Board of Education acting by and through their employees, agents, officials, and co-conspirators pursuant to governmental policy, practice, and custom, and under color of law.

## STATEMENT OF FACTS

### A.  Protected Activity

18.     Plaintiffs incorporate the forgoing paragraphs as if fully set forth herein.

19.     In January 2021, Montague was formally elected as NTU Building Representative.

20.     Prior to Montague's appointment as NTU Building Representative, Ferrara and Crowe engaged in activity protected under the First Amendment to the United States Constitution and Constitution of the State of New Jersey, including but not limited to NTU activity and speaking with coworkers and to Board administration about work-related matters

278133

during faculty meetings. They have also been openly supportive of Montague as NTU Building Representative in faculty meetings and other public settings.

21.     As a result of his appointment as NTU Building Representative and/or his NTU membership, Montague has been subjected to discipline and discriminatory treatment by Pared and the Board to which other non-NTU members have not been similarly subjected.

22.     As a result of their engagement in protected activity, including but not limited to their open support of and affiliation with Montague and/or the NTU, as well as their NTU membership, Ferrara and Crowe have been subjected to discipline and discriminatory treatment by Pared and the Board to which other individuals who have not engaged in protected activity have not been similarly subjected to.

23.     In fact, in or around April 2021, in a WebEx faculty meeting, Pared publicly challenged Montague's appointment as NTU Building Representative and expressly threatened staff to not speak to Montague in this role because doing so would threaten the chain of command, or "she would have a problem with them," or "they would have a problem with her." Staff members were instead instructed to speak to the District (and not the NTU) if they had questions about work-related matters.

24.     On January 18, 2022, Vice Principal LaContee Hill ("Hill") stated to Crowe that Plaintiff Montague was the "head target," and that everyone by association was "damned one way or another." During the same conversation, Hill confirmed that Pared had previously stated something to the effect of "I'm the principal and . . . if you have a problem, you don't have to take it [to Montague or the NTU] . . . come straight to me." Further, Hill stated to Crowe that "95% of the stuff" for which Defendant Pared was responsible could be "spun to make sense to other people in the District."

278133

25.     Since Montague's appointment as NTU Building Representative, all staff members except Ferrara and Crowe have heeded Pared's instruction and avoided approaching Montague regarding work-related matters.

26.     Following Montague's appointment as NTU Building Representative, Pared surreptitiously listened in on and/or attended NTU meetings conducted via tele-conference, without permission or authorization.

27.     On or around June 18, 2021, during a conversation with Crowe, Hill confirmed Pared's attendance at all NTU meetings, stating, "You have yet to have one meeting where [Pared] is not involved."

28.     During a WebEx faculty meeting in or around December 2020, Pared admitted to the meeting attendees that she had attended prior NTU meetings.

29.     During a WebEx NTU meeting in or around January 2021, Ferrara publicly stated that she was "appalled" at Pared's behavior and Pared's listening in on NTU meetings. Unbeknownst to Ferrara at that time, Pared was in attendance.

30.     On or around June 17, 2021, Plaintiffs attended a WebEx meeting with JoAnne Watson ("Watson"), Director of the Board's Office of Labor & Employee Relations, and approximately twenty (20) other staff members.

31.     The purpose of the meeting was to address Pared's hostility toward NTU, its membership, and advocacy for same.  This meeting was intended to be confidential, but Pared was again, surreptitiously in attendance.

32.     A few days later, during a conference telephone call with Plaintiffs, Watson acknowledged that she was aware that Pared had attended the confidential June 17, 2021 meeting and apologized for Pared's unauthorized attendance.

278133

B. **Adverse Employment Actions**

1. **Negative Teacher Performance Observations and Evaluations**

   a. *Sanyika Montague*

33.    Montague was formally observed on two occasions—November 3, 2020 and March 22, 2021.  On both dates, he received a performance rating of "Effective."

34.    Notwithstanding these ratings of "Effective," following his May 6, 2021 annual summative evaluation, Montague received a rating of "Partially Effective" for the 2020-2021 school year.

35.    Montague was informed that he would be placed on a Corrective Action Plan ("CAP"), placing him jeopardy of tenure charges for "inefficiency" pursuant to the TEACHNJ Act, which authorizes the commencement of tenure charges against tenured teaching staff with two consecutive performance evaluations rated either "Ineffective" or "Partially Effective."

36.    Since commencing employment with the Board twenty-four (24) years ago, Montague has been rated an "Effective" teacher in all annual summative evaluations until the conclusion of the 2020-2021 school year.

   b. *Jennifer Ferrara*

37.    During the 2020-2021 school year, Ferrara taught 6th and 7th Grade English Language Arts.

38.    Ferrara was formally observed on two occasions—December 19, 2020 and March 2, 2021.

39.    In December 2020, she received a rating of "Effective."

40.    Following the threats of Pared to take reprisals against those associated with Montague, on or about March 2, 2021, Ferrara received a rating of "Partially Effective."

278133

41.     Following this observation, Ferrara was not provided with any tools or strategies to foster improvement in the areas in which she was allegedly deficient, nor did District administration visit any of her virtual classrooms to support the areas of growth they cited as scoring below expectation.

42.     On May 13, 2021, Ferrara received an overall rating of "Partially Effective" for the 2020-2021 school year.  She was informed that she was inconsistent in submitting lesson plans, but she had never been previously disciplined for this issue or otherwise notified that she was not in compliance in this area.

43.     As a result of her "Partially Effective" summative rating for the 2020-2021 school year, Ferrara was informed that she would be placed on a CAP, placing her jeopardy of tenure charges for "inefficiency" pursuant to the TEACHNJ Act, which authorizes the commencement of tenure charges against tenured teaching staff with two consecutive performance evaluations rated either ineffective or partially effective.

44.     Since commencing employment with the Board sixteen (16) years ago, Ferrara has consistently received "Effective" summative performance evaluations.

45.     Further, for the 2019-2020 school year, Ferrara was considered the model literacy teacher among the middle school, and her classroom teaching model was used as a learning tool for other teachers.  Prior to the closing of the Rafael Hernandez School due to the COVID-19 pandemic, Ferrara's classroom often hosted professional development training sessions, as well as all middle school grade-level meetings.

   c.     *Vangela Crowe*

46.     During the 2020-2021 school year, Crowe was formally observed on four occasions—November 20, 2020, December 16, 2020, March 8, 2021, and April 13, 2021.

47.     On November 20, 2020, she received a rating of "Effective."

48.     Following her association with and support of Montague, on December 16, 2020, she received a rating of "Partially Effective."

49.     On March 8, 2021, Crowe received a rating of "Partially Effective."

50.     On April 13, 2021, Crowe received a "Partially Effective" summative rating for the 2020-2021 school year.

51.     As a result of her "Partially Effective" summative rating for the 2020-2021 school year, Crowe was informed that she would be placed on a CAP.  As a non-tenured teacher, Crowe's employment is already at risk of not being renewed, and her placement on a CAP only increases the likelihood of a non-renewal.

52.     On December 3, 2021, Crowe was formally observed and received a rating of "Ineffective."  The next day, her rating was changed to "Partially Effective."

53.     Since commencing employment with the Board twenty-three (23) years ago, Crowe has consistently received "Effective" summative performance evaluations until the conclusion of the 2020-2021 school year.

54.     Crowe's annual summative evaluation rating of "Partially Effective" is inconsistent with her job performance, which has been recognized by Pared.

55.     Specifically, during the 2018-2019 school year, Crowe achieved the highest scores on State testing and data in the Rafael Hernandez School.  She also received a handwritten note from Pared praising Crowe's teaching efforts.

56.     Even after receiving a "Partially Effective" summative rating, Crowe was selected by Pared to serve on the Pandemic Response Team and School Improvement ("SCiP") Panel Committee.  Crowe was also subsequently chosen to work summer school.

2.  **Targeted Discipline**

   a.   ***Discipline Directed to all Plaintiffs***

57.     As a result of their NTU advocacy, the Plaintiffs were targeted for and subjected to disciplinary action.

58.     On April 25, 2021, Montague was responsible for the supervision of one student during a school-wide mask break on the playground. During the break, the student asked Montague if they could stand next to the heater because it was cold and windy that day. Montague granted the student permission to do so while keeping the student within his vantage point.  Montague also engaged in conversation with Ferrara and Crowe during the break.

59.     During the break, Pared informed Montague that this arrangement was "fine" because no individuals were in close proximity to them but, following this comment, abruptly cancelled the break and directed everyone to return to class.

60.     During the same break, Ferrara was responsible for the supervision of one student. The student asked Ferrara if she could rest on the steps outside of the cafeteria doors instead of standing in their designated area, and Ferrara granted her permission to do so, moving closer to that area so the student would remain within her vantage point.  At that time, another teacher supervising a larger group of students stood in Ferrara's designated spot.

61.     During the same break, Crowe was responsible for the supervision of two students.  During the break, one student stood near Crowe, while the other student stood in the shade because they were uncomfortable standing in the sun.  Crowe permitted the second student to stand in the shade because, the prior week, a student fainted in another classroom and was rushed to the hospital, and Crowe wished to avoid a similar situation from occurring.

278133

62.    Following the mask break, between April 26, 2021 and April 27, 2021, Montague, Ferrara, and Crowe each received a written reprimand for not being in their respective "designated areas" during the school-wide mask break and for being engaged in a conversation with their peers, "putting both staff and students in danger of contracting COVID-19."  The written reprimands charged this behavior as neglect of duty and insubordination.  A total of eight staff members, including Plaintiffs, were written up following the mask break.

63.    Pared subsequently cancelled school-wide mask breaks for the next two days, informing the entire school that Montague, Ferrara, and Crowe's behavior during the April 25, 2021 mask break was the sole reason for her decision.

64.    Further, on April 26, 2021, during a scheduled Grade Level Meeting, Pared berated Montague, Ferrara, and Crowe in front of the entire administration, at one point yelling, "I'm going to talk to you like children because you're acting like children."  Following this meeting, Pared restored school-wide mask breaks for all staff members, including those who were written up at the same time as Montague, Ferrara, and Crowe, but suspended only Montague, Ferrara, and Crowe's mask break privileges for the remainder of the school year.

65.    In or around September 2021, Plaintiffs' lunch periods were changed such that they no longer shared the same lunch periods as each other.

66.    On January 5, 2022, a faculty meeting was held to discuss the work environment and culture at Rafael Hernandez School.  Pared was in attendance at this meeting.

67.    During the faculty meeting, Plaintiffs provided feedback on the retaliatory and threatening work environment, as well as their personal experiences of administration using intimidation tactics.

68.     On January 6, 2022, Plaintiffs' respective supervisors were transitioned to new individuals. To Plaintiffs' knowledge, no other staff members have been subjected to similar changes.

### b.     *Discipline Directed Toward Sanyika Montague*

69.     On April 29, 2021, a meeting was held with a student regarding his performance. The student's mother, Montague, and other teaching staff members were in attendance.

70.     The mother apologized for her son's subpar performance and requested, via translation, any help that the District could offer because she could not "do anything" with her children.  Montague responded in jest, "No worries, Mom.  Leave him with me and I will tighten him right up."  The mother then responded via translation, "When can you pick him up?" with a smile.

71.     Notwithstanding the lighthearted nature of the conversation between Montague and the mother, on April 29, 2021, Montague received a written reprimand alleging that the student's mother had complained to Pared about what she referred to as his condonation of child abuse.

72.     On or around May 14, 2021, Pared searched for and obtained Montague's police records and provided resulting information, as well as Montague's "mug shot" to staff and parents of students. This information included allegations of domestic violence against Montague by his ex-wife that were later dropped as having no basis.

73.     By distributing Montague's arrest records, Pared intended to embarrass, harass, defame and otherwise harm Montague's reputation among the students, staff, administrators, parents and a larger school-wide community.

278133

### c. *Discipline Directed Toward Ferrara*

74.     On April 28, 2021, Ferrara attended an Individualized Education Program ("IEP") WebEx meeting to discuss one of her students' performance. The student, his mother, and his other teaching staff members were also in attendance.

75.     Although the student had failed to timely hand in his work for the majority of the school year despite being provided accommodations and extensions on assignments, much of the meeting consisted of the case manager repeatedly asking the student whether he knew how to log in to Google Classroom and WebEx. Because neither software/platform was newly introduced that school year, Ferrara questioned why the faculty were entertaining the idea that the issue was that the student did not know how to log in, rather than his own poor performance.

76.     The WebEx meeting ended amicably. Nonetheless, on April 29, 2021, Ferrara received a written reprimand based on the mother allegedly complaining to Pared that the mother "could see that [Ferrara] didn't want to be there and her subsequent statement that [she wasn't] sure why a meeting for [the student] was being held." The written reprimand alleged that this "inappropriate" question constituted conduct unbecoming.

77.     Ferrara has taught five members of the student's family over the last seven years, and the student's mother has never complained or otherwise inquired about her other children's academic or behavioral performance.

78.     In or around September 2021, the Board conducted a walk-through of Ferrara's classroom. The resulting report claimed that Ferrara's classroom was lacking certain required supplies, which was inaccurate. The Board never responded to Ferrara's written rebuttal.

278133

### d.    *Discipline Directed Toward Crowe*

79.    On September 23, 2021, Crowe was approached by the District Vice Principal, Stephanie Vargas ("Vargas"), who accused her of taking photographs in that moment.  Crowe was not taking any photographs and offered to show Vargas her phone as proof, but Vargas laughed and declined, saying, "We are all adults here."

80.    On September 27, 2021, the District conducted a walk-through of Crowe's classroom.  The resulting report claimed that certain skills were not hung highly enough; she did not have her "word wall up," it was not current, and it was not displayed in the correct area, and she did not have her lesson plans or subfolders available.  These allegations were inaccurate, and Crowe challenged these claims with supporting documentation but never received a response.

81.    On November 2, 2021, the Board conducted another walk-through of Crowe's classroom. She received a "written reprimand" from Pared.  The resulting report claimed, among other things, that Crowe did not have substitute lesson plans available via her "Google Folder," the main office folder, or in her classroom.  However, on September 17, 2021, Crowe had submitted the substitute lesson plans, which were available at that point in her folder in her classroom, as well as on Google Drive.  In fact, on or around November 3, 2021, Hill confirmed to Crowe that, during the time in question, Hill had previously acknowledged and thanked Crowe for the submission of these substitute lesson plans.

82.    On or around November 9, 2021, Montague, as NTU Building Representative, and Crowe attended a conference telephone call with Pared, Hill, and Assistant Superintendent Jose Fuentes ("Fuentes") to discuss the November 2, 2021 write-up.  Following Pared and Crowe's presentation of the facts, which included Pared's assertion that Crowe failed to

278133

replenish and/or submit her substitute plans in a timely manner, Fuentes stated, "Whatever [Crowe] submitted on September 17 is more than sufficient."

83.    The November 2, 2021 write-up charged Crowe with neglect of duty for failing to provide any substitute lesson plans in her folder or on Google Drive, but Pared admitted during the November 9, 2021 conference call that the plans were in fact in place, but had "scribbling" on them, which made it difficult to discern what lessons were taught during Crowe's absence.

84.    Crowe challenged the written reprimand, which was later reduced to a "verbal reprimand."

85.    On January 12, 2022, Defendants again falsely issued to Crowe a baseless charge of neglect of duty.  Specifically, Vice Principal Vargas informed Crowe that Crowe's lesson plans were incomplete and should have been updated and completed.  On January 18, 2022, Vargas e-mailed Crowe confirming this conversation and scheduling a discussion regarding this charge on January 19, 2022.  On the same day, Crowe also responded to Vargas that her lesson plans had been submitted for 10 days and, accordingly, a neglect of duty charge was inaccurate and inappropriate.  Crowe also clarified that any required changes to these lesson plans were instead due next on January 20, 2022.

86.    Each and all of the aforementioned adverse employment actions, as well as others presently known and/or unknown, are causally related to the Plaintiffs' engagement in activity protected by both the Constitution of the United States and the State of New Jersey and taken under color of law.

278133

**COUNT ONE**
**First Amendment Retaliation Claim Under 42 U.S.C. § 1983**

87.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein at length.

88.     The First Amendment to the United States Constitution grants all citizens, including public employees, the right to freely associate with others without fear of government retaliation.  Involvement in union-related activity constitutes protected conduct.

89.     The disparate treatment directed at Plaintiffs was ordered by Pared in retaliation for Montague's appointment as the Association's Building Representative and other protected Union-related activities, including but not limited to speaking individually to other NTU members, the Board, and Board employees regarding workplace conditions, in violation of the First Amendment to the United States Constitution.

90.     Defendants violated Plaintiffs' rights guaranteed by the First Amendment to the United States Constitution.  Plaintiffs were deprived of their First Amendment freedom to associate, rendering Defendants liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

91.     Defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983 because Pared acted under color of law and exhibited a reckless and callous indifference to Plaintiffs' rights through her purposeful actions, willful misconduct, and evil motive, and is an upper-level administrator and agents of Defendant City of Newark Board of Education and/or a direct supervisor of Plaintiffs.  Moreover, the custom, policy, and practice of the employer, Defendant Board, caused Plaintiffs to be harmed.

92.     As a result of Defendants' wrongful conduct, Plaintiffs have been deprived of their employment rights and other civil rights.  Such retaliatory and wrongful treatment of Plaintiffs includes but is not limited to adverse employment action with potentially detrimental

effects in the form of negative, less than "Effective" performance observation and evaluation ratings, disciplinary action, and harassment, placing Plaintiffs at risk of tenure charges, future disciplinary action, and loss of income in the form of salary increment withholdings.

93.    Plaintiffs have also suffered emotional distress, pain, and suffering.  Further, Plaintiffs have been compelled to retain an attorney to vindicate their rights.

## COUNT TWO
### Retaliation Claim Under the New Jersey Civil Rights Act at <u>N.J.S.A</u>. 10:6-1 to 10:6-2

94.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein at length.

95.    Plaintiffs assert that Defendants have engaged in adverse employment actions and retaliation based upon Plaintiffs' lawful exercise of their valid right to speak out and expose official misconduct and violations of law, their right to seek redress, and their rights to unionize and associate freely.  The retaliation for the exercise of these rights by Plaintiffs includes disparate treatment and adverse employment decisions, including arbitrary and negative performance ratings and written reprimands.

96.    Defendants are liable to Plaintiffs under the New Jersey Civil Rights Act, <u>N.J.S.A</u>. 10:6-1 to 10:6-2, which creates a state law cause of action for violations of an individual's State Constitutional rights.

97.    <u>N.J.S.A</u>. 10:6-2(c) provides a remedy against public Defendants for a person who demonstrates that he or she "has been deprived of any substantive rights, privileges, or immunities secured by the Constitution or laws of this State."  Such person "may bring a civil action for damages and for injunctive or other appropriate relief." <u>N.J.S.A</u>. 10:6-2(c).

278133

98.    Defendants' acts were wrongful, without basis in law or in fact, arbitrary, capricious, unconscionable, unconstitutional, contrary to law, and otherwise erroneous and under color of law.

99.    As a direct result of Defendants' wrongful conduct, Plaintiffs have been deprived of their employment rights and other rights.  Plaintiffs have sustained injury to their reputations and to their employability.  Plaintiffs have also suffered emotional distress, pain, and suffering. Further, Plaintiffs have been compelled to retain an attorney to vindicate their rights. Additionally, Plaintiffs have been otherwise injured.

## COUNT THREE
### Conspiracy Under 42 U.S.C. § 1985

100.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein at length.

101.    Defendants conspired amongst themselves for the purpose of depriving Plaintiffs of their rights to equal protection as safeguarded under 42 U.S.C. § 1985(1), (2), and (3) and conspired to commit acts violating 42 U.S.C. § 1985(1), (2), and (3), had the power and opportunity to prevent or aid in the prevention of the deprivation of those rights, and Defendants purposefully neglected, failed or refused to prevent the success of such conspiracy rendering Defendants liable to Plaintiffs pursuant to 42 U.S.C. § 1985.

102.    Defendants exhibited a reckless and callous indifference to Plaintiffs' rights through their purposeful actions, willful misconduct, and evil motive and are all upper-level administrators and agents of Defendants' employer and/or direct supervisors of Plaintiffs. Moreover, the custom, policy, and practice of Defendants caused Plaintiffs to be harmed.

103.    As a result of Defendants' wrongful conduct, Plaintiffs have been deprived of their employment rights and other rights.  Plaintiffs have sustained injury to their reputations and

278133

to their employability.    Plaintiffs have also suffered emotional distress, pain, and suffering. Further, Plaintiffs have been compelled to retain an attorney to vindicate their rights. Additionally, Plaintiffs have been otherwise injured.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1.    Issue an Order preventing Defendants, their officers, agents, employees, and all other persons acting in active concert with them, from engaging in discriminatory, harassing and or retaliatory behavior against Plaintiffs in retaliation for Plaintiffs' NTU membership and engagement in protected activities.

2.    Grant equitable relief rescinding retaliatory performance observations and evaluations, rescinding all retaliatory disciplinary actions and restoring salary increment withholdings.

3.    Award damages, including pre and post judgment interest, for any and all economic loss, pain and suffering and punitive damages, along with an award of reasonable counsel fees and costs pursuant to 42 U.S.C. §§ 1985 and 1988 and the New Jersey Civil Rights Act.

4.    Grant such other relief that is equitable, just, and proper under the circumstances.

**Respectfully s**ubmitted,

s/    *Colin M. Lynch*
 Colin M. Lynch, Esq.
**Zazzali, Fagella, Nowak,
Kleinbaum & Friedman**
570 Broad Street, Suite 1402
Newark, New Jersey 07102
p: (973) 623-1822
f: (973) 623-2209
clynch@zazzai-law.com
Attorney for Plaintiffs

Dated:  January 20, 2022

20

278133

## <u>CERTIFICATION</u>

Pursuant to 28 U.S.C. 1746 and Civ. Rule 11.2, the undersigned hereby certifies that the within matter in controversy is not the subject of any other pending or contemplated court action or arbitration proceeding.

s/    _Colin M. Lynch_

Colin M. Lynch, Esq.

Dated:  January 20, 2022

21

278133